The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with the modification of plaintiff's entitlement to temporary total disability benefits.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The carrier liable on the risk is Shelby Insurance Company.
4. Plaintiff's average weekly wage may be determined from the Form 22, Wage Chart.
5. On December 10, 1998, plaintiff sustained a compensable injury arising out of and in the course of her employment.
6. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of documents including North Carolina Industrial Commission forms, correspondence, Plaintiff's Answers to Interrogatories, plaintiff's medical records and documents regarding further treatment.
7. A Form 22, Wage Chart, was stipulated into evidence as Stipulated Exhibit 2.
8. The depositions of Benjamin Goodman, Jr., M. D., Maher F. Habashi, M. D. and Stephen J. Sladicka, M. D. are a part of the evidentiary record in this matter.
 ***********
A Form 21, Agreement for Compensation, was approved by the Commission on May 10, 1999 and provides that plaintiff will be paid temporary total disability compensation at the rate of $336.02 based upon an average weekly wage of $504.00 for necessary weeks for her compensable December 10, 1998 left knee injury. This Agreement constitutes an award of the Commission.
 ***********
Based upon the evidence of record, the Full Commission modifies the findings of fact of the Deputy Commission and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 57 year-old, born November 10, 1943. Plaintiff finished the eight grade and thereafter primarily worked in the furniture industry as well as working as a waitress. All of plaintiff's job experience involves jobs requiring standing. Plaintiff became employed with defendant-employer in 1979 as a waitress and bartender. This was a full-time standing position involving standing, walking and the ability to lift and balance food service trays.
2. On December 10, 1998, plaintiff sustained an admittedly compensable injury by accident when she slipped on a wet floor in defendant-employer's kitchen and sustained an inferior pole avulsion fracture of her left patella.
3. On December 11, 1998, plaintiff underwent an open reduction and internal fixation surgery including the use of screws and wires performed by Dr. Stephen Sladicka, a board-certified orthopedic surgeon.
4. Plaintiff continued to treat with Dr. Sladicka and underwent a course of physical therapy.
5. On April 19, 1999, plaintiff improved to the point that the range of motion of her knee was normal according to Dr. Sladicka. By May 6, 1999, Dr. Sladicka indicated that plaintiff had continued to build her quadriceps muscles and maintained full range of motion. Therefore, plaintiff discontinued physical therapy and began a home exercise program. On June 7, 1999, Dr. Sladicka discussed a return to work with plaintiff and recommended a work schedule of three to four hours of work for four weeks. Thereafter, plaintiff was to begin a four-week period of full time shift work as tolerated.
6. As a result, plaintiff returned to work with light duty restrictions on June 9, 1999 with defendant-employer working four hours per day doing office work in the evening hours. After approximately three or four weeks, plaintiff began working as a hostess or bartender whenever she could. Plaintiff also began waitressing on a limited basis. Plaintiff received temporary partial disability compensation for the difference in her wages.
7. On August 9, 1999, plaintiff returned to Dr. Sladicka indicating that she was having difficulty working and standing on her feet as required and that the increase to full time was not working. Plaintiff complained of knee aches and felt that she was unable to return to full-time work. Based on plaintiff's complaints, Dr. Sladicka recommended a four-hour workday or that plaintiff seek another position. He provided plaintiff with a work note for sitting work, if available and four hours of standing work per day for four days per week. According to Dr. Sladicka, plaintiff probably had reached maximum medical improvement as of August 9, 1999 but the greater weight of the evidence of record indicates that there was not a final determination of maximum medical improvement until March 20, 2000.
8. On August 14, 1999, plaintiff had a left hemispheric stroke, which produced paralysis on the right side of her body. Plaintiff was treated for this condition by her board-certified family physician, Dr. Benjamin Goodman.
9. On September 20, 1999, plaintiff returned to Dr. Sladicka who found plaintiff's left knee condition essentially unchanged but with a slight reduction in range of motion. Although he stated that plaintiff had reached maximum medical improvement, again, the greater weight of the evidence of record indicates that there was not a final determination of maximum medical improvement until March 20, 2000. Plaintiff's inability to work at this time was due more so to her stroke than to her patella injury according to Dr. Sladicka who was unable to state whether but for the stroke plaintiff would have been capable of returning to full duty work as of September 20, 1999. Dr. Sladicka indicated that Dr. Goodman's input would be necessary concerning plaintiff's ability to work.
10. Following her stroke, plaintiff went through rehabilitation and made a significant recovery. On March 13, 2000, Dr. Goodman released plaintiff to return to work even though she had right-sided weakness and a right foot drop. Dr. Goodman was of the opinion that plaintiff could return to work on light duty of lifting less than ten pounds and with the ability to stop for brief rests.
11. Plaintiff was evaluated by Dr. Sladicka on March 20, 2000 complaining of some residual pain. Dr. Sladicka found that plaintiff had reduced range of motion of 10 degrees and occasional clicking in her knee but no instability otherwise present. Dr. Sladicka found plaintiff at maximum medical improvement with a 6% permanent partial impairment of the left lower extremity.
12. On January 4, 2001, plaintiff presented to Dr. Maher Habashi, a board-certified orthopedic surgeon, for a second opinion. Dr. Habashi was of the opinion that plaintiff suffered from an enlarged patella, crepitus, pain with stress of left quadriceps and a ten-degree reduction in range of motion of the left knee. Furthermore, Dr. Habashi rated plaintiff with a 20% permanent partial disability of the left lower extremity with the permanent restriction of a seated job with frequent changes of position. Moreover, he indicated that plaintiff is incapable of waitressing full-time.
13. Plaintiff was incapable of earning the same wages that she earned before her injury in the same employment or in any other employment from December 10, 1998 until June 9, 1999. Plaintiff was paid temporary total disability compensation for this period.
14. From June 9, 1999 as a result of her compensable injury by accident, plaintiff was capable of returning to work earning a diminished wage as compared to the wage she earned before her compensable injury.
15. On August 14, 1999, when plaintiff suffered a stroke, plaintiff was capable of performing half-time office work. At the time of plaintiff's stroke on August 14, 1999, defendants terminated plaintiff's temporary partial disability unilaterally without permission from the Commission.
16. Defendants rebutted the presumption of total disability as of June 9, 1999 and plaintiff reached maximum medical improvement as of March 20, 2000 with respect to her left lower extremity. The greater weight of the evidence demonstrates that plaintiff is partially disabled. Furthermore, plaintiff was released to light duty work from the unrelated stroke on March 13, 2000 by Dr. Goodman.
17. On October 16, 2000, defendants offered plaintiff a sixteen to twenty hour per week receptionist job at $7.00 per hour, which plaintiff refused. Regardless of the suitability of this position, plaintiff nevertheless would have remained partially disabled.
18. From August 14, 1999 through March 13, 2000 and continuing for 300 weeks from the date of her injury, plaintiff is entitled to temporary partial disability compensation at the same rate that she was receiving on August 13, 1999 as she continued to only be able to work half-time office work due to her compensable injury.
19. The parties stipulated that plaintiff's average weekly wage could be determined from a Form 22, Wage Chart. However, the wage chart was not completed correctly. Accordingly, plaintiff's average weekly wage is $504.00 as indicated on the Form 21.
20. There is a substantial risk that plaintiff will require future medical treatment for her compensable injury.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On December 10, 1998, plaintiff sustained an admittedly compensable injury by accident, resulting in a fractured left patella. N.C.G.S. § 97-2(6).
2. As a result of her compensable injury by accident, plaintiff was incapable of earning the same wages or greater wages that she earned before her injury in the same employment or in any other employment from December 10, 1998 until June 9, 1999. Plaintiff has been paid temporary total disability compensation for this period. N.C.G.S. § 97-29.
3. Defendants have proven by the greater weight of the evidence that plaintiff is no longer totally disabled from her injury by accident. However, plaintiff remains partially disabled. As a result of her compensable injury by accident, plaintiff was capable of returning to work earning diminished wages beginning June 9, 1999 and continuing. Plaintiff is therefore entitled to temporary partial disability benefits beginning June 9, 1999 and continuing for 300 weeks from the date of plaintiff's injury by accident. Plaintiff has received temporary partial disability benefits for the period of June 9, 1999 until August 14, 1999. Therefore, plaintiff is entitled to temporary partial disability benefits from August 14, 1999 and continuing for 300 weeks from the date of plaintiff's injury at the same weekly rate that she was receiving benefits on August 13, 1999. N.C.G.S. § 97-30.
5. On March 20, 2000, as a result of her compensable injury by accident, plaintiff reached maximum medical improvement with a 6% permanent partial disability to her left leg. As a result, plaintiff is entitled to elect the more munificent remedy, which is temporary partial disability. N.C.G.S. § 97-31; N.C.G.S. § 97-30.
6. Plaintiff is entitled to reasonably necessary medical treatment, which tends to effect a cure, provide relief or lessen the period of plaintiff's disability. Plaintiff is entitled to future medical treatment as there is a substantial risk that plaintiff will require future medical treatment for her compensable injury. N.C.G.S. § 97-25; N.C.G.S. § 97-25.1
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. For her temporary partial disability, defendants shall pay plaintiff compensation at the rate of $168.00 per week from August 14, 1999 and continuing for 300 weeks from the date of plaintiff's injury by accident. All accrued amounts shall be paid in one lump sum. This Award is subject to a reasonable attorney's fee approved in Award 2.
2. A reasonable attorney's fee of 25% of the compensation due under Award 1 is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel by way of 25% of the accrued lump sum and thereafter by way of every fourth weekly compensation check.
3. Defendants shall pay for all reasonably necessary medical treatment, which tends to effect a cure, provide relief or lessen the period of plaintiff's disability. This shall include future medical treatment as there is a substantial risk that plaintiff will need such treatment.
4. Defendants shall pay the costs, including an expert witness fee, if not already paid which is hereby approved, to Dr. Habashi in the amount of $300.00.
This the ___ day of October 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________________ LAURA KRANFELD MAVRETIC COMMISSIONER